STATE OF CONNECTICUT *v.* EDDIE A. RODRIGUEZ
(AC 19654)

Spear, Mihalakos and Zarella, Js.

Argued December 1, 2000—officially released February 13, 2001

*Avery S. Chapman*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Susan C. Marks*, supervisory assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Cecilia B. Wiederhold*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Eddie A. Rodriguez, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1),[1] attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a)[2] and 53a-59 (a) (1),[3] robbery in the third degree in violation of General Statutes (Rev. to

---

[1] General Statutes § 53a-101 (a) provides: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[2] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

1989) § 53a-136 (a),[4] interfering with an officer in violation of General Statutes § 53a-167a (a)[5] and carrying a dangerous weapon in violation of General Statutes § 53-206.[6] He claims that the court improperly (1) failed to conduct a hearing to determine whether his attorney provided adequate representation, thus depriving him of his constitutional right to effective assistance of counsel, and (2) charged the jury on consciousness of guilt. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On October 23, 1990, the defendant became involved in a confrontation with the victim, his estranged girlfriend, who worked as a secretary-receptionist at the South Central Elderly Nutrition Project in New Haven. Although the victim had terminated their relationship one week earlier, the defendant went to her New Haven office on the day in question seeking to take her to lunch. The defendant had been drinking heavily that morning and, after he arrived at the office, he argued with the victim, tore a necklace from her neck and struck her in the face. Mathilda Gibbs, the victim's supervisor, immediately ordered the defendant to leave the building.

---

[4] General Statutes (Rev. to 1989) § 53a-136 (a) provides: "A person is guilty of robbery in the third degree when he commits robbery."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[5] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[6] General Statutes § 53-206 (a) provides in relevant part: "Any person who carries upon his person any . . . knife the edged portion of the blade of which is four inches or over in length . . . unless such person has been granted a written permit . . . authorizing such person to carry such weapon . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . ."

In response to complaints from the victim's coworkers, officers from the New Haven police department came to the building, conducted an investigation and issued a police radio broadcast that alerted other officers to be on the lookout for the defendant. After the officers departed, a supervisor locked all of the building's doors and windows to keep the defendant out in the event that he should return.

Despite those precautions, the defendant appeared a short time later and crashed through a first floor window, kicked in the door to the victim's office, pulled a knife from his pants, pinned her against the wall and threatened to kill her. Gibbs came to the victim's assistance and grabbed the defendant's arm. The handle of the knife fell to the floor, but the defendant maintained his grip on the eight inch to ten inch blade. The victim managed to escape to another office and called the police while Gibbs restrained the defendant.

Several other workers joined the victim in the office where she took refuge. The defendant ultimately escaped from Gibbs and made an unsuccessful attempt to kick in the door to the office in which the victim was hiding. He also threatened the victim's coworkers, saying that he would "get" them. When police officers arrived for the second time that day, the defendant fled from the building.

The officers chased the defendant through the surrounding neighborhood and eventually apprehended and arrested him. Following his arrest, the defendant continued to call the victim and send her mail. On November 13, 1990, he also telephoned one of her coworkers, Phyllis Ford, who had seen the defendant kick in a glass window and enter the building on the day of the incident. In his call to Ford, the defendant said, "Hey, Phyllis, I understand you're hanging around with [the victim] . . . And you know, I'm going to get

you for that. . . . And if I don't get you, I have friends who will get you."

Thereafter, the defendant was charged with burglary in the first degree, attempt to commit assault in the first degree, robbery in the third degree, interfering with an officer and carrying a dangerous weapon. Following a jury trial, the defendant was found guilty as charged.

The defendant appealed from the judgment of conviction, but before the appeal could be heard, he withdrew it pursuant to a plea agreement in several unrelated matters. He subsequently filed a habeas corpus petition alleging ineffective assistance of counsel with respect to the withdrawal and seeking reinstatement of the appeal. The habeas court found that because the trial court had not advised the defendant of his right to appeal, he had not waived his appellate rights knowingly and voluntarily. The habeas court accordingly reinstated his right to appeal. This appeal followed.[7]

I

The defendant first claims that the court improperly failed to conduct a hearing on the issue of inadequate representation, thus depriving him of his constitutional right to effective assistance of counsel. He claims that he informed the court prior to his trial that his attorney had been preoccupied defending himself against criminal charges and did not have sufficient time to prepare the defendant's case. According to the defendant, that constituted a conflict of interest and, after he objected to his counsel's lack of preparation, the court had an absolute duty to inquire further. He contends that when

[7] On July 1, 1999, the defendant filed a statement indicating that the court reporter no longer had copies of the trial transcripts. Thereafter, on March 17, 2000, the defendant filed a motion for permission to file the brief previously filed in the earlier appeal. The appendix to the brief contains what appear to be the only surviving portions of the trial transcript. This court granted the motion on April 27, 2000.

the court merely took notice of the defendant's objection and proceeded with the trial, it failed in its duty.

The following additional facts are necessary for our resolution of this claim. A public defender initially represented the defendant. On May 15, 1991, the court denied the defendant's pro se motion seeking permission to represent himself. Two weeks later, attorney Frank Cannatelli appeared on behalf of the defendant in lieu of the public defender. Immediately prior to jury selection in November, 1991, the defendant informed the court that Cannatelli recently had been a defendant himself in another criminal proceeding. The defendant claimed that this constituted a conflict of interest that prevented Cannatelli from adequately preparing for the defendant's trial. The court took no action, and the defendant advised the court that he would proceed with the trial under "protest."[8]

---

[8] The defendant and the court engaged in the following colloquy:

"[The Defendant]: I have a question. . . . I get along with my attorney, but I just have a question about my lawyer's ability as it appears for this trial right now.

"The Court: What area do you think he's lacking in preparation? What are you worried about, specifically?

\* \* \*

"[The Defendant]: I just believe that there's a conflict of interest, Your Honor. The fact—

"The Court: What's a conflict of interest?

"[The Defendant]: Well, Your Honor . . . the fact that he was a criminal defendant himself about three weeks ago, Your Honor; he didn't prepare for my case when he should have been preparing for my case, but if—

"The Court: You can't point to anything specific that leads you to believe he's not ready, can you?

"[The Defendant]: Your Honor, the whole—all the facts—he knows the basics, he doesn't know specifically.

"The Court: What are you talking about?

"[The Defendant]: My condition, like I thought maybe talking to the doctors, psychiatrists I saw a week before all this happened, indicating my mental status at the time.

"If the state wishes to proceed . . . . I have no objection to that. But I do have objection to the prosecution, Your Honor, if it's going to keep on, I want to protest, proceed with protest.

"The Court: Your protest is noted."

We begin our discussion by noting that "[t]he United States and Connecticut constitutions have afforded individuals certain minimum rights in criminal proceedings. The trial court safeguards these rights and ensures that none is violated during a criminal prosecution. *State* v. *Brown*, 235 Conn. 502, 527, 668 A.2d 1288 (1995). The trial judge plays a crucial role in ensuring that a criminal defendant receives a fair trial by an impartial jury, and must be ever vigilant, throughout the course of the trial. . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is [the judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975). . . . *State* v. *Brigandi*, [186 Conn. 521, 542, 442 A.2d 927 (1982)]. . . . *State* v. *Brown*, [supra, 527]. As an appellate body, we are responsible for reviewing claims arising from the trial court's acts or omissions that violate constitutional rights and affect the trial proceedings itself.

"The sixth amendment to the United States constitution, as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution guarantee a defendant the right to effective assistance of counsel in a criminal proceeding. *Powell* v. *Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *State* v. *Mason*, 186 Conn. 574, 577, 442 A.2d 1335 (1982). Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. *Wood* v. *Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *Festo* v. *Luckart*, 191 Conn. 622, 626–27, 469 A.2d 1181 (1983). The underlying right to conflict free representation is effective assistance of counsel. See *Phillips* v. *Warden*, 220 Conn. 112, 134, 595 A.2d 1356 (1991).

"The importance of safeguarding this right led to the requirement that, under certain conditions, the trial court must explore the possibility of a conflict. *Holloway* v. *Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978); *Cuyler* v. *Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Festo* v. *Luckart*, supra, 191 Conn. 629. Moreover, one of the principal safeguards of this right is the rule . . . that [a trial] court must explore the possibility of a conflict . . . when it knows or reasonably should know of a conflict. . . . *Festo* v. *Luckart*, supra, 629; *State* v. *Martin*, 201 Conn. 74, 79, 513 A.2d 116 (1986). In order to safeguard these federal and state constitutional rights, the United States Supreme Court and Connecticut courts have placed a duty on a trial court to inquire about a possible conflict in certain circumstances. Its failure to do so can lead to a claimed violation of a constitutional right. *Wood* v. *Georgia*, [supra, 450 U.S. 261]; *State* v. *Martin*, supra, 78. Although rooted in the right to effective assistance of counsel, such a claim seeks to address the actions of the trial court during a criminal proceeding, not the actions of counsel.

"The difference between a claim of ineffective assistance of counsel brought in a habeas proceeding and a claim involving the failure of a trial court to safeguard a defendant's right to effective assistance of counsel when questioned in a direct appeal is that the former requires a showing to the habeas court that the defendant in fact received ineffective assistance of counsel, whereas the latter requires an appellate determination that the trial court was alerted to a possible conflict and failed to investigate it. In *State* v. *Martin*, supra, 201 Conn. 81–83, after concluding on direct [appeal] that the trial court was alerted to a possible conflict by the defendant's attorney and that the trial court failed to investigate the attorney's claim, the Supreme Court

ordered a new trial, but did not determine whether an actual conflict existed.

"The actions of a trial court are unlike the trial strategy of counsel. The activities of counsel may not be apparent on the record but the words and rulings of a trial court are readily reviewable from the record itself. When a defendant, therefore, alleges that the trial court's failure to inquire about a possible conflict of interest led to the deprivation of a constitutional right during the criminal prosecution, the claim is proper for a direct appeal." (Internal quotation marks omitted.) *State* v. *Phidd*, 42 Conn. App. 17, 33–35, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997).

"There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . . A trial court's failure to inquire in such circumstances constitutes the basis for reversal of a defendant's conviction." (Citations omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 686, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

"The extent of the [trial court's] inquiry . . . lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Citation omitted; internal quotation marks omitted.) *State* v. *Ruffin*, 48 Conn. App. 504, 514, 710 A.2d 1381, cert. denied, 245 Conn. 910, 718 A.2d 18 (1998).

After the defendant raised the possibility of a conflict of interest on the part of his counsel, the court queried him several times regarding his allegations. Initially, the court asked the defendant, "What's a conflict of interest?" When the defendant replied that the conflict involved inadequate preparation because his attorney had been a criminal defendant himself within the previous three weeks, the court followed with, "You can't point to anything specific that leads you to believe he's not ready, can you?" The defendant answered that his attorney knew the basics, but not the specifics, of his case. The court attempted to elicit examples of his attorney's inadequate preparation when it asked the defendant, "What are you talking about?" The defendant replied vaguely, "maybe talking to the doctors . . . [about] my mental status at the time." The defendant then told the court that he had "no objection" to proceeding with the trial, but that he wanted to register his objection to "the prosecution." The court took notice of the defendant's protest and the trial commenced.

The defendant never provided direct factual support for his allegations that a conflict of interest affected his attorney's ability to represent him at trial, despite the court's multiple attempts to elicit specific examples of inadequate preparation. Accordingly, we conclude that the court gave the defendant ample opportunity to describe his complaints and that the court did not abuse its discretion by failing to conduct a separate hearing as to a possible conflict of interest, thus resulting in a violation of the defendant's constitutional right to effective assistance of counsel. See id.

The defendant cites *Phillips* v. *Warden*, supra, 220 Conn. 133, for the proposition that in cases in which there is an actual conflict of interest, as is claimed here, prejudice is presumed and the court has a duty to inquire further. In *Phillips*, however, the trial court made *no* inquiry as to whether a conflict of interest

existed that gave rise to ineffective assistance of counsel. Id., 114–15. By contrast, the court in this case inquired of the defendant *several times* regarding his allegations that his counsel had a conflict of interest. The defendant, however, failed to provide any direct factual support for those allegations. We therefore conclude that the defendant had an adequate opportunity to inform the court of his complaint, and there was no need for the court to conduct a further hearing.

The defendant also argues that as the trial progressed, it became increasingly clear that his attorney was not adequately prepared and that the court had a duty to inquire further. In his brief, he points out that defense counsel conducted "inept cross-examination of critical prosecution witnesses," was ignorant of the name, function and availability of a motion for judgment of acquittal at the close of the prosecution's case, carelessly "ventur[ed] into areas of questioning filled with potential prejudice" to the defendant, failed to file any requests for jury instructions, even though he claimed to be pursuing a defense of intoxication to the specific intent charges, and failed to subpoena or otherwise obtain records and testimony from the alcohol treatment facilities that would have corroborated that defense.

The record discloses, however, that after his pretrial comments, the defendant never again raised the issue of inadequate representation. Had the defendant continued to be dissatisfied, he could have directed the court's attention to alleged deficiencies in his attorney's performance as they came to light. Moreover, on the record before us, which the defendant concedes is incomplete; see footnote 7; we cannot conclude that the court knew or reasonably should have known that his counsel's representation was inadequate. The defendant's charges of inept cross-examination, careless questioning, ignorance of motion practice and failure to

obtain records are so lacking in specificity that they are beyond the ability of this court to assess and certainly do not form any basis for a conclusion that the trial court should have known that a conflict existed.[9] We thus conclude that the court did not abuse its discretion by failing to inquire further regarding the defendant's allegations of ineffective assistance of counsel as the trial proceedings progressed.

## II

The defendant next claims that the court improperly instructed the jury on consciousness of guilt. He claims that there could be no conceivable link between the crimes charged and the alleged telephone call to Ford, in which he said that he would "get" Ford because she was "hanging around" with his former girlfriend. Although he did not take exception to the jury instruction at the time it was made, he now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[10]

The following additional facts are necessary to our resolution of this claim. The court instructed the jury on consciousness of guilt as follows: "There is a concept called consciousness of guilt. And there was testimony about actions or statements made by the defendant subsequent to the criminal act charged. And by that I'm referring to the phone call in November [1990]. Whenever a person is on trial for a criminal offense, it is proper to show that person's conduct as well as any declarations made by him subsequent to the alleged criminal offense which may fairly have been influenced by that act. This conduct can be shown because such

[9] The defendant remains free to seek habeas relief on the ground of ineffective assistance of counsel despite our determination that the court did not fail in its duty to inquire.

[10] In his brief, the defendant seeks review under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). Because *Evans* has been further refined by *Golding*, however, he in effect seeks review pursuant to *Golding*.

conduct or statements might tend to show a guilty connection by the defendant with the crime charged. If such evidence, however, is capable of two reasonable interpretations, one of which is consistent with innocence, the evidence is to be given that interpretation. It is up to you as judges of the facts to decide whether certain acts, statements or conduct of the defendant reflect a consciousness of guilt."

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." *State* v. *Beltran*, 246 Conn. 268, 275, 717 A.2d 168 (1998).

"On appeal, the claim for review must meet all four prongs of the *Golding* analysis to be successful. . . . We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 579, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000).

We conclude that the defendant's claim fails the second prong of *Golding*. "It has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the [*Golding*] standard. See *State* v. *Robinson*,

227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Merritt*, 36 Conn. App. 76, 96, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995). *State* v. *Snead*, 41 Conn. App. 584, 591, 677 A.2d 446 (1996). It is well settled that the trial court can be expected to rule only on those matters that are put before it. See *Lee* v. *Lee*, 174 Conn. 5, 7, 381 A.2d 529 (1977). With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. See *State* v. *Golding*, [supra, 213 Conn. 239]. To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge. *Baker* v. *Cordisco*, 37 Conn. App. 515, 522, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995). *Mack* v. *LaValley*, 55 Conn. App. 150, 157, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999); *Flewellyn* v. *Hempstead*, 47 Conn. App. 348, 353, 703 A.2d 1177 (1997)." (Internal quotation marks omitted.) *State* v. *Gibson*, 56 Conn. App. 154, 160–61, 742 A.2d 397 (1999). We therefore decline to review this unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.