EDDIE RODRIGUEZ *v.* COMMISSIONER
OF CORRECTION
(AC 31539)

Lavine, Robinson and Peters, Js.

---

Argued May 31—officially released September 13, 2011

*April E. Brodeur*, special public defender, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner, Eddie Rodriguez, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his second amended petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and improperly rejected his claim that his trial counsel rendered ineffective assistance due to an actual conflict of interest. We agree that the court abused its discretion in denying certification to appeal; nevertheless, we conclude that the court properly determined that the petitioner had failed to prove that his trial counsel rendered ineffective assistance. Accordingly, we affirm the judgment of the habeas court.[2]

The record reveals the following relevant facts and procedural history. In connection with an incident involving the petitioner's estranged girlfriend, which occurred in October, 1990, the petitioner was charged with burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), attempt to commit assault in

---

[1] Although the petitioner's term of incarceration expired in 2010, his appeal is not moot because he attacks the legality of his conviction, and he filed the second amended petition while in the custody of the respondent, the commissioner of correction. See, e.g., *Haynes* v. *Bronson*, 13 Conn. App. 708, 710–11, 539 A.2d 592 (1988).

[2] See *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 425–26, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011).

the first degree in violation of General Statutes §§ 53a-49 (a) and 53a-59 (a) (1), robbery in the third degree in violation of General Statutes (Rev. to 1989) § 53a-136 (a), interfering with an officer in violation of General Statutes § 53a-167a (a) and carrying a dangerous weapon in violation of General Statutes § 53-206.[3] On May 29, 1991, attorney Frank Cannatelli filed an appearance on behalf of the petitioner.

Prior to representing the petitioner, Cannatelli had been charged with two counts of bribery of a witness in an unrelated case. Cannatelli pleaded not guilty to both charges and elected a jury trial. In October, 1991, a jury trial was conducted in Meriden. On October 29, 1991, the jury acquitted Cannatelli of both charges.

Jury selection for the petitioner's criminal trial in New Haven commenced on November 26, 1991. On the first day of jury selection, the petitioner voiced concern to the trial court that Cannatelli's recent criminal prosecution created a conflict of interest. After inquiring into the petitioner's claim, the court was not persuaded that cause existed to delay the proceedings. Thereafter, a jury was selected and the presentation of evidence began on December 2, 1991. The jury returned a verdict of guilty on all counts, and the petitioner was sentenced on March 6, 1992, to a term of imprisonment of sixteen years, execution suspended after nine years, and five years of probation. The petitioner appealed from his conviction to this court, which affirmed the judgment.[4]

---

[3] For a detailed account of the facts underlying these charges, see *State* v. *Rodriguez*, 61 Conn. App. 700, 702–704, 767 A.2d 756 (2001).

[4] Notably, in his direct appeal to this court, the petitioner claimed, inter alia, that the trial court had "improperly failed to conduct a hearing on the issue of inadequate representation, thus depriving [the petitioner] of his constitutional right to effective assistance of counsel." *State* v. *Rodriguez*, 61 Conn. App. 700, 704, 767 A.2d 756 (2001). After considering the petitioner's claim, this court concluded that the trial court had "not abuse[d] its discretion by failing to conduct a separate hearing as to a possible conflict of interest . . . ." Id., 709. Accordingly, this court rejected the petitioner's claim.

*State* v. *Rodriguez*, 61 Conn. App. 700, 767 A.2d 756 (2001).

In 2002, after he had commenced his probation, the petitioner was arrested and charged with violating the terms of his probation in violation of General Statutes § 53a-32. In 2003, the petitioner was found to have violated his probation, and the court sentenced him to serve the remaining seven years of his unexecuted sentence.

On December 16, 2008, the petitioner filed his second amended petition for a writ of habeas corpus, claiming that Cannatelli had rendered ineffective assistance due to an actual conflict of interest. The petitioner alleged that Cannatelli's criminal prosecution shortly before the petitioner's criminal trial had created an inherent conflict of interest that adversely affected Cannatelli's ability to represent the petitioner in his criminal trial.[5] In his pretrial brief, the petitioner explained that Cannatelli's criminal prosecution constituted a conflict of interest because it prevented him from preparing for the petitioner's criminal trial.[6] Additionally, the petitioner contended that Cannatelli's criminal prosecution constituted a conflict of interest pursuant to our Supreme Court's decision in *Phillips* v. *Warden*, 220 Conn. 112, 595 A.2d 1356 (1991).

On April 29, 2009, the habeas court conducted an evidentiary hearing, at which Cannatelli, the petitioner and George Gray, an investigator with the office of the chief public defender, testified, and the court received exhibits. After considering the evidence, the court

---

[5] In her return to the petitioner's second amended petition, the respondent, the commissioner of correction, alleged the special defenses of procedural default and res judicata. The habeas court rejected the respondent's special defenses, and the respondent has not challenged those rulings on appeal.

[6] After reviewing the second amended petition, we conclude that the petitioner arguably raises this claim in subparagraphs (m) and (n) of paragraph nine.

found that Cannatelli "was prepared and 'ready to go to trial' on [the petitioner's] case." The court also found that the media coverage of Cannatelli's prosecution was minimal, and that Cannatelli, during voir dire in the petitioner's criminal trial, had asked each venireperson generally whether he or she had any prior knowledge of Cannatelli and that no venireperson indicated that he or she had any such knowledge.

On the basis of these findings, the habeas court concluded that the petitioner had failed to establish that Cannatelli was actively representing conflicting interests at the time that he represented the petitioner. The court also concluded that the facts of the petitioner's case did not establish a conflict of interest pursuant to *Phillips* v. *Warden,* supra, 220 Conn. 112. The court then denied the petitioner's second amended petition. Subsequently, the petitioner filed a petition for certification to appeal, which the court denied on August 19, 2009. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the well established standard of review and legal principles that guide our resolution of the present appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. *Simms* v. *Warden,* 230 Conn. 608, 612, 646 A.2d 126 (1994). A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . Id., 616, quoting *Lozada* v. *Deeds,* 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). The required determination may be made on the basis of the record before the habeas court and applicable legal principles.

See *Simms* v. *Warden*, supra, 617. If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. Id., 612. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in *Lozada* and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification." (Citation omitted; internal quotation marks omitted.) *Bewry* v. *Commissioner of Correction*, 121 Conn. App. 259, 265–66, 994 A.2d 697, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 582, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005). "As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Internal quotation marks omitted.) *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 194, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001). Thus, "[t]he underlying right to conflict free representation is effective assistance of counsel." *State* v. *Rodriguez*, supra, 61 Conn. App. 706.

"In a case of a claimed conflict of interest . . . in order to establish a violation of [his constitutional

rights] the [petitioner] has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *Phillips* v. *Warden,* supra, 220 Conn. 132–33; *Anderson* v. *Commissioner of Correction,* 127 Conn. App. 538, 549, 15 A.3d 658, cert. granted on other grounds, 301 Conn. 921, 22 A.3d 1280 (2011). "Unlike other claims of ineffective assistance of counsel, where a petitioner claims that his counsel's performance was deficient because of an actual conflict of interest, prejudice does not need to be established." *Zollo* v. *Commissioner of Correction,* 93 Conn. App. 755, 757, 890 A.2d 120, cert. denied, 278 Conn. 904, 896 A.2d 108 (2006); see also *Phillips* v. *Warden,* supra, 133–34. Instead, "[w]here there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties." (Internal quotation marks omitted.) *Phillips* v. *Warden,* supra, 133; *Anderson* v. *Commissioner of Correction,* supra, 549; see *Strickland* v. *Washington,* 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("[p]rejudice is presumed . . . if the [petitioner] demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance" [internal quotation marks omitted]); *State* v. *Vega,* 259 Conn. 374, 387, 788 A.2d 1221 (same), cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

"On appellate review, the historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . When, as in this case, those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review." (Citation omitted; internal

quotation marks omitted.) *Adorno* v. *Commissioner of Correction,* supra, 66 Conn. App. 194.

On appeal, the petitioner claims that the habeas court abused its discretion in denying certification to appeal. The petitioner also claims that the habeas court improperly rejected his claim that Cannatelli rendered ineffective assistance due to an actual conflict of interest. Specifically, the petitioner claims that Cannatelli's prosecution resulted in a conflict of interest pursuant to *Phillips* v. *Warden,* supra, 220 Conn. 112. Additionally, the petitioner claims that there was a conflict of interest because (1) Cannatelli's prosecution prevented him from preparing properly for the petitioner's criminal trial and (2) Cannatelli sought to protect his own reputation during voir dire.

I

The petitioner claims that Cannatelli's prosecution created a conflict of interest pursuant to *Phillips* v. *Warden,* supra, 220 Conn. 112. Specifically, the petitioner argues that because Cannatelli was prosecuted in the same judicial district as the petitioner,[7] there existed a constitutionally impermissible risk that the jury would identify the conduct of Cannatelli with the conduct of the petitioner and would impute the improprieties of Cannatelli to the petitioner. According to the petitioner, because of this constitutionally impermissible risk, it was a breach of the duty of loyalty, and thus a conflict of interest, for Cannatelli to represent the petitioner. Although we find that the habeas court abused its discretion in denying certification based on this claim, we nevertheless conclude that the claim fails on its merits.

---

[7] During the evidentiary hearing, the habeas court, pursuant to General Statutes § 51-344, took judicial notice of the fact that Meriden, the city in which Cannatelli was prosecuted, and New Haven, the city in which the petitioner's criminal trial was held, are both in the judicial district of New Haven.

We begin our analysis by undertaking a review of our Supreme Court's decision in *Phillips* v. *Warden*, supra, 220 Conn. 112. In *Phillips*, the petitioner was convicted of sexual assault, unlawful restraint and burglary in connection with a violent attack against an elderly woman. Id., 114, 116, 140. Throughout his criminal trial, the petitioner was represented by Bernard L. Avcollie; id., 114; an attorney who "had been convicted of murdering his wife by strangling her to death, a crime of violence of the first order of seriousness . . . ." Id., 140. Avcollie had been tried and convicted in the same judicial district where the petitioner's criminal trial took place, and he was appealing his conviction at the same time he was representing the petitioner. Id., 117, 122. In addition, Avcollie's "indictment, trial and conviction, and the ensuing appeals . . . had been the subject of widespread publicity" in the judicial district for over seven years. Id., 140.

Following his conviction, the petitioner filed a petition for a writ of habeas corpus, alleging, inter alia, that he had been denied the effective assistance of trial counsel due to an actual conflict of interest. Id., 114, 116–17. On appeal from the habeas court's judgment denying the petition for a writ of habeas corpus, the petitioner claimed before this court that "it was a violation of Avcollie's duty of loyalty, and thus a conflict of interest, to represent the petitioner in the [same] judicial district [where Avcollie had been convicted of murder] because of the risk that the potential jurors would know of Avcollie's murder conviction and *hold it against the petitioner*." (Emphasis added.) Id., 128–29. This court disagreed, concluding that the representation did not constitute a conflict of interest. Id., 129–30.

On appeal from this court's decision, our Supreme Court recognized that a conflict of interest may arise in "situations where the *intrinsic situation* of the lawyer, when viewed in the context of his client's cause,

requires that he withdraw from representing the client because of the *impermissible risk* that the jury will identify his conduct with that of this client. . . . Thus, an attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors *personal to him* that are inconsistent, diverse or otherwise discordant with [the interests] of his client . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 138–39.

Thereafter, our Supreme Court concluded that Avcollie's representation of the petitioner created a conflict of interest, reasoning as follows: "Surely no other criminal defendant in the history of Connecticut jurisprudence—indeed, in the history of American jurisprudence—has ever had to face a jury in a trial for serious and violent criminal offenses, while represented by a convicted murderer, whose conviction was likely to have been known by the jurors, in the judicial district where both the murder and conviction took place, where both the murder and its ensuing legal aftermath had been widely reported in the press, and when the murderer was literally on his own way to prison. Surely, no other attorney in the history of Connecticut or American jurisprudence has ever brought with him to the criminal jury courtroom *the potential for prejudice to his client* that Avcollie brought to the . . . courtroom . . . [when he represented the petitioner]. Under these unique factual circumstances, we are constrained to conclude that there was a *constitutionally impermissible risk* that the petitioner's jurors would identify Avcollie's status as a convicted murderer with his client's status as an accused rapist, kidnapper and burglar, and that they would transfer to the petitioner the distaste or revulsion that they may have felt for his lawyer." (Emphasis added.) Id., 140–41.

Turning to the petitioner's substantive claim, we have been unable to locate any case in which either this court or our Supreme Court has addressed the issue of whether there was a constitutionally impermissible risk that the jury would identify the conduct of an attorney with his client and, consequently, impute the improprieties of the attorney to his client, when the attorney has been prosecuted but *acquitted* of a nonviolent and dissimilar crime in the same judicial district in which his client subsequently faced criminal prosecution. Because such a question has not yet been addressed by any appellate court of this state, we conclude that the ineffective assistance of counsel claim raised by the petitioner is adequate to deserve encouragement to proceed further. See *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 391–92, 909 A.2d 533 (2006) (concluding that claim deserved encouragement to proceed further when no appellate case had decided precise issues), aff'd, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). Therefore, we conclude that the habeas court abused its discretion in denying the petition for certification to appeal. See *Lozada* v. *Deeds*, supra, 498 U.S. 432; *Simms* v. *Warden*, supra, 230 Conn. 616.

Having determined that the habeas court abused its discretion in denying the petition for certification to appeal, we now consider whether the judgment of the habeas court should be reversed on the merits. The petitioner claims that the court improperly concluded that he was not deprived of the effective assistance of trial counsel due to an actual conflict of interest because there was a constitutionally impermissible risk that the jury would attribute the conduct of Cannatelli to the petitioner and would impute the improprieties of Cannatelli to the petitioner. According to the petitioner, such a constitutionally impermissible risk arose

because Cannatelli was prosecuted in the same judicial district in which the petitioner subsequently faced criminal prosecution.

As our Supreme Court made clear in *Phillips*, however, it declined to establish a per se rule that a conflict of interest arises any time a lawyer who has been prosecuted or convicted of a crime subsequently represents a criminal defendant. *Phillips* v. *Warden*, 220 Conn. 142–43. Instead, as the court noted earlier in its opinion, and subsequently confirmed in its analysis, the determination of whether a conflict of interest exists must be made by considering "the facts of the particular case, viewed as of the time of counsel's conduct." (Internal quotation marks omitted.) Id., 134. Accordingly, we must undertake a careful consideration of the facts in the present case to determine whether a conflict of interest existed. See *State* v. *Thompson*, 118 Conn. App. 140, 150, 983 A.2d 20 (2009) (considering individual facts of case to determine whether conflict of interest existed pursuant to *Phillips*), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010).

After considering the facts, we cannot conclude that the petitioner has demonstrated that the constitutionally impermissible risk identified by our Supreme Court in *Phillips* existed in the present case. In reaching this conclusion, we acknowledge that the criminal prosecutions of both Cannatelli and the petitioner occurred in the same judicial district. We necessarily focus, however, on how the other facts in the present case differ markedly from the "unique factual circumstances" found in *Phillips*. *Phillips* v. *Warden*, supra, 220 Conn. 141.

First, unlike Avcollie, Cannatelli was acquitted prior to the petitioner's criminal trial, and he did not have any appeals or other personal legal proceedings pending at the time of the petitioner's criminal trial. Second,

according to the habeas court's factual findings, the media coverage of Cannatelli's criminal case was "minimal" and therefore Cannatelli's criminal case had a "much lower profile" than Avcollie's criminal case, which "had been the subject of widespread publicity" for over seven years. *Phillips* v. *Warden*, supra, 220 Conn. 140. Third, in *Phillips*, Avcollie was prosecuted and convicted of "murdering his wife by strangling her to death, a crime of *violence* of the first order of seriousness, and the petitioner was charged with the crimes of sexual assault, unlawful restraint and burglary, arising out of a factual scenario of terrible *violence* against an elderly woman." (Emphasis added.) Id. In the present case, however, the crimes with which Cannatelli was prosecuted (two counts of bribery of a witness) and the crimes with which the petitioner subsequently was prosecuted (burglary, attempt to commit assault, robbery, interfering with an officer and carrying a dangerous weapon) did not have the same overlap, either as to the circumstances in which they allegedly occurred or the type of charges. Finally, Cannatelli *inquired* as to whether any venireperson had any prior knowledge of him, whereas Avcollie never made any such inquiry, even though he "believed that most of the venirepersons knew of his murder conviction . . . ." Id., 125. For these reasons, we conclude that the constitutionally impermissible risk identified by our Supreme Court in *Phillips* does not exist in the present case and, accordingly, the petitioner has failed to demonstrate a conflict of interest of constitutional magnitude. "To hold otherwise would overly expand the contours of the concept of a conflict of interest." *Adorno* v. *Commissioner of Correction*, supra, 66 Conn. App. 195.

II

The petitioner next claims that Cannatelli was laboring under a conflict of interest because his criminal

prosecution prevented him from preparing properly for the petitioner's criminal trial. We are not persuaded.

"We have had occasion to point out the caution from the United States Supreme Court that the *possibility* of conflict is insufficient to impugn a criminal conviction. . . . *Cuyler* v. *Sullivan*, [446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)]. To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 87 Conn. App. 584–85.

In his brief to this court, the petitioner offers only speculation as to the possibility that Cannatelli compromised the petitioner's interests. He argues that in the weeks leading up to Cannatelli's criminal trial, Cannatelli focused on his own trial to the exclusion of the petitioner's criminal trial and, therefore, did not prepare properly for the petitioner's criminal trial. The petitioner, however, has not pointed to a scintilla of evidence in the record to support his assertions or which indicates that Cannatelli did not undertake reasonable preparation for the petitioner's criminal trial. In addition to not offering any evidence in support of his assertions, the petitioner has failed to undermine the habeas court's factual finding that Cannatelli "was prepared and 'ready to go to trial' on [the petitioner's] case." Accordingly, the petitioner has failed to allege anything more than a mere theoretical division of loyalties, which is insufficient to demonstrate an actual conflict of interest. See *Santiago* v. *Commissioner of Correction*, supra, 87 Conn. App. 585.

## III

The petitioner finally claims that a conflict of interest existed because Cannatelli sought to protect his own reputation during voir dire. Specifically, the petitioner argues that Cannatelli would have asked the venire-persons more probing questions regarding his own prosecution had he not been concerned with protecting his own reputation "at the expense of the petitioner's valuable right to individual, probing voir dire." As the petitioner raises this claim for the first time on appeal, we decline to consider it.

"A petition for a writ of habeas corpus must set forth specific grounds for the issuance of the writ. Practice Book § 23-22 (1) specifically provides that the petition shall state the specific facts upon which each specific claim of illegal confinement is based and the relief requested . . . . A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." (Citations omitted; internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 197–98, 19 A.3d 705 (2011); see also *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 169–70, 10 A.3d 578 ("[t]his court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding" [internal quotation marks omitted]), cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011).

After reviewing the amended petition, we conclude that it fails to allege that Cannatelli had a conflict of interest and, consequently, rendered ineffective assistance, because he sought to protect his own integrity during voir dire at the expense of the rights or interests of the petitioner. Additionally, we have reviewed the pretrial briefs and transcript of the habeas trial but have

found no mention of such a claim. Finally, the habeas court did not address this issue in its memorandum of decision. Accordingly, we decline to consider this claim.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Although we decline to consider this claim, we note that the petitioner has failed to point to any specific examples in the record to support his claim, relying instead on conjecture and speculation.