******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDDIE RODRIGUEZ *v.* COMMISSIONER OF
CORRECTION
(SC 18940)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued February 11—officially released July 1, 2014*

*April E. Brodeur*, assigned counsel, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ROGERS, C. J. The dispositive issue in this habeas corpus appeal is whether the petitioner, Eddie Rodriguez, was denied his right to the effective assistance of counsel because there was a constitutionally impermissible risk that the jury would impute to him the alleged improprieties of his attorney, who had been prosecuted but acquitted of a nonviolent and dissimilar crime in the same judicial district in which the petitioner was prosecuted. The petitioner appeals from the judgment of the Appellate Court affirming the habeas court's denial of his second amended petition for a writ of habeas corpus. *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 338, 27 A.3d 404 (2011). On appeal, the petitioner claims that the Appellate Court improperly applied this court's precedent in *Phillips* v. *Warden*, 220 Conn. 112, 595 A.2d 1356 (1991), in concluding that the petitioner failed to demonstrate an actual conflict of interest that adversely affected his attorney's performance. We conclude that the Appellate Court properly applied *Phillips*, and, accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts and procedural background. "In connection with an incident involving the petitioner's estranged girlfriend, which occurred in October, 1990, the petitioner was charged with burglary in the first degree in violation of General Statutes [Rev. to 1989] § 53a-101 (a) (1), attempt to commit assault in the first degree in violation of General Statutes [Rev. to 1989] §§ 53a-49 (a) and 53a-59 (a) (1), robbery in the third degree in violation of General Statutes (Rev. to 1989) § 53a-136 (a), interfering with an officer in violation of General Statutes [Rev. to 1989] § 53a-167a (a) and carrying a dangerous weapon in violation of General Statutes [Rev. to 1989] § 53-206. On May 29, 1991, [A]ttorney Frank Cannatelli filed an appearance on behalf of the petitioner.

"Prior to representing the petitioner, Cannatelli had been charged with two counts of bribery of a witness in an unrelated case. Cannatelli pleaded not guilty to both charges and elected a jury trial. In October, 1991, a jury trial was conducted in Meriden. On October 29, 1991, the jury acquitted Cannatelli of both charges.

"Jury selection for the petitioner's criminal trial in New Haven commenced on November 26, 1991. On the first day of jury selection, the petitioner voiced concern to the trial court that Cannatelli's recent criminal prosecution created a conflict of interest. After inquiring into the petitioner's claim, the court was not persuaded that cause existed to delay the proceedings. Thereafter, a jury was selected and the presentation of evidence began on December 2, 1991. The jury returned a verdict of guilty on all counts, and the petitioner was sentenced on March 6, 1992, to a term of imprisonment of sixteen

years, execution suspended after nine years, and five years of probation. The petitioner appealed from his conviction to [the Appellate Court], which affirmed the judgment. *State* v. *Rodriguez*, 61 Conn. App. 700, 767 A.2d 756 (2001).

"In 2002, after he had commenced his probation, the petitioner was arrested and charged with violating the terms of his probation in violation of General Statutes [Rev. to 2001] § 53a-32. In 2003, the petitioner was found to have violated his probation, and the court sentenced him to serve the remaining seven years of his unexecuted sentence.

"On December 16, 2008, the petitioner filed his second amended petition for a writ of habeas corpus, claiming that Cannatelli had rendered ineffective assistance due to an actual conflict of interest. The petitioner alleged that Cannatelli's criminal prosecution shortly before the petitioner's criminal trial had created an inherent conflict of interest that adversely affected Cannatelli's ability to represent the petitioner in his criminal trial. In his pretrial brief, the petitioner explained that Cannatelli's criminal prosecution constituted a conflict of interest because it prevented him from preparing for the petitioner's criminal trial. Additionally, the petitioner contended that Cannatelli's criminal prosecution constituted a conflict of interest pursuant to . . . *Phillips* v. *Warden*, [supra, 220 Conn. 112].

"On April 29, 2009, the habeas court conducted an evidentiary hearing, at which Cannatelli, the petitioner and George Gray, an investigator with the [O]ffice of the [C]hief [P]ublic [D]efender, testified, and the court received exhibits. After considering the evidence, the court found that Cannatelli was prepared and ready to go to trial on [the petitioner's] case. The court also found that the media coverage of Cannatelli's prosecution was minimal, and that Cannatelli, during [individual] voir dire in the petitioner's criminal trial, had asked each venireperson generally whether he or she had any prior knowledge of Cannatelli and that no venireperson indicated that he or she had any such knowledge.

"On the basis of these findings, the habeas court concluded that the petitioner had failed to establish that Cannatelli was actively representing conflicting interests at the time that he represented the petitioner. The court also concluded that the facts of the petitioner's case did not establish a conflict of interest pursuant to *Phillips* v. *Warden*, supra, 220 Conn. 112. The court then denied the petitioner's second amended petition. Subsequently, the petitioner filed a petition for certification to appeal, which the court denied on August 19, 2009." (Footnotes omitted; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 338–41. The petitioner appealed from the habeas court's denial of certification to the Appellate Court.

The Appellate Court determined that the habeas court abused its discretion in denying the petitioner's request for certification to appeal. Id., 344. Specifically, the Appellate Court concluded that the petitioner's ineffective assistance of counsel claim deserved to proceed further because it presented the novel question of whether there was a constitutionally impermissible risk that a jury would attribute an attorney's conduct to his client, when the attorney had been *acquitted* of a nonviolent and dissimilar crime in the same judicial district in which his client faced criminal prosecution. Id., 347; see *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994) (petitioner may establish abuse of discretion by demonstrating that "the questions are adequate to deserve encouragement to proceed further" [internal quotation marks omitted]). Nonetheless, the Appellate Court concluded that the petitioner's ineffective assistance of counsel claim failed on its merits, and, accordingly, affirmed the judgment of the habeas court. *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 349. This certified appeal followed.[1]

On appeal, the petitioner claims that the Appellate Court improperly concluded that he failed to demonstrate a conflict of interest pursuant to *Phillips* that deprived him of his right to the effective assistance of counsel. In response, the respondent, the Commissioner of Correction, claims that the Appellate Court properly distinguished *Phillips* from the present case and correctly determined that there was not a constitutionally impermissible risk that the jury would impute to the petitioner the alleged improprieties of his trial attorney. We conclude that the Appellate Court properly applied *Phillips* in concluding that the petitioner failed to demonstrate a conflict of interest of constitutional magnitude. We therefore affirm the judgment of the Appellate Court.

We begin with the well settled standard of review governing ineffective assistance of counsel claims. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 62, 951 A.2d 520 (2008).

We next set forth the legal principles that inform our disposition of the present appeal. "[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel

at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [supra, 466 U.S. 686]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012). "As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 220 Conn. 132.

"In a case of a claimed conflict of interest . . . in order to establish a violation of the [right to counsel] the [petitioner] has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) Id., 133. Although ordinarily a petitioner claiming ineffective assistance of counsel must demonstrate that his counsel's performance was deficient, and that the deficient performance resulted in actual prejudice to the defense; *Strickland* v. *Washington*, supra, 466 U.S. 687; a petitioner who claims that his counsel was burdened by a conflict of interest does not need to establish prejudice. *Phillips* v. *Warden*, supra, 220 Conn. 132–33. "Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." (Internal quotation marks omitted.) Id., 133; see *Strickland* v. *Washington*, supra, 692 ("[p]rejudice is presumed . . . if the [petitioner] demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance" [internal quotation marks omitted]).

Before we turn to the merits of the petitioner's claim, a brief overview of this court's decision in *Phillips* is essential to our resolution of the present appeal. In *Phillips*, the petitioner, John M. Phillips, was convicted by a jury of sexual assault in the first degree in violation of General Statutes § 53a-70, unlawful restraint in the first degree in violation of General Statutes § 53a-95, and burglary in the first degree in violation of General Statutes § 53a-101 for an incident that occurred in 1981. *Phillips* v. *Warden*, supra, 220 Conn. 114. Throughout his criminal trial, Phillips was represented by Bernard L. Avcollie, an attorney who was in the process of appealing his own murder conviction resulting from a widely publicized trial in the same judicial district in which Phillips faced criminal prosecution. Id., 117, 122.

During his general introductory remarks to the panel

of venirepersons, Avcollie advised the panel as follows: "If you know anything about any of the people that I have mentioned that work in my office *or particularly about me, if there is anything that you know or feel about me that will inhibit your ability to judge this man fairly, then you should so indicate.*" (Emphasis added; internal quotation marks omitted.) Id., 125. Subsequently, Avcollie did not inquire during individual voir dire as to whether the venirepersons had any prior knowledge of him despite his belief that most of the venirepersons were aware of his murder conviction.[2] Id.

After Phillips was convicted, he filed a petition for a writ of habeas corpus alleging that he was denied his constitutional right to the effective assistance of counsel because Avcollie had a conflict of interest. Id., 114. The habeas court denied his petition for a writ of habeas corpus, and on appeal to the Appellate Court, Phillips argued that it was a violation of Avcollie's duty of loyalty to represent him in the same judicial district in which Avcollie had been convicted of murder, and that, as a result of this conflict of interest, he was denied his right to the effective assistance of counsel. Id., 114, 128–29. The Appellate Court rejected Phillips' claim and affirmed the judgment of the habeas court. *Phillips* v. *Warden*, 23 Conn. App. 63, 68, 579 A.2d 1092 (1990), rev'd, 220 Conn. 112, 595 A.2d 1356 (1991).

On appeal, this court reversed the judgment of the Appellate Court. *Phillips* v. *Warden*, supra, 220 Conn. 147. The court concluded that, under the unique factual circumstances in that case, Avcollie was indeed burdened by an actual conflict of interest that deprived Phillips of his right to the effective assistance of counsel. Id., 139–40. The court's analysis in *Phillips* began by observing that, "[w]hile the right to conflict-free representation typically is implicated in cases involving representation of criminal codefendants by a single attorney . . . it is equally applicable in other cases where a conflict of interest may impair an attorney's ability to represent his client effectively." (Citations omitted; internal quotation marks omitted.) Id., 134–35. Accordingly, the court observed that a conflict of interest may arise when "the intrinsic situation of the [attorney], when viewed in the context of his client's cause, requires that he withdraw from representing the client because of the impermissible risk that the jury will identify his conduct with that of his client. . . . Thus, an attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors personal to him that are inconsistent, diverse or otherwise discordant with [the interests] of his client . . . ." (Citations omitted; internal quotation marks omitted.) Id., 138–39.

Applying these principles to the situation in *Phillips*, this court concluded that "Avcollie's representation of

[Phillips] was fatally flawed by an inherent conflict of interest because Avcollie's duties of undivided loyalty and independent exercise of professional judgment demanded that he withdraw from representing [Phillips] on the serious charges that [Phillips] faced in that place and at that time." Id., 139. The court further concluded that the violation of Avcollie's duty of loyalty in failing to withdraw from Phillips' criminal case adversely affected Avcollie's performance as his attorney. Id., 139–40. "[A]s a direct result of his violation of those duties, Avcollie was required to make the tactical choice of choosing between two options—inquiring of the venirepersons during individual voir dire whether they knew about his murder conviction, or forgoing such inquiry—either of which was fraught with peril for [Phillips'] right to a fair trial before an impartial jury . . . ." Id. "Either choice was harmful to [Phillips'] interest, because either course of conduct created the impermissible risk that the jurors who were to judge [Phillips] would do so infected by their view of Avcollie." Id., 145. Accordingly, the court reversed the judgment of the Appellate Court. Id., 147.

Against the backdrop of this court's holding in *Phillips*, we now turn to the merits of the petitioner's claim in the present case. The petitioner makes two primary arguments on appeal. First, the petitioner contends that the Appellate Court improperly distinguished the factual circumstances in the present case from *Phillips*. Second, the petitioner contends that this court's precedent in *Phillips* required that Cannatelli conduct a probing individual voir dire as to each venireperson's knowledge of Cannatelli's criminal case. We disagree with each of the petitioner's claims.

We begin with the petitioner's claim that the Appellate Court inappropriately distinguished the facts in the present case from *Phillips*. Despite the petitioner's argument to the contrary, we agree with the Appellate Court that the circumstances surrounding Cannatelli's criminal prosecution differed in several critical respects from Avcollie's criminal prosecution in *Phillips*.

First and foremost, unlike Avcollie, Cannatelli was acquitted, not convicted, of the criminal charges against him prior to the petitioner's criminal trial. The petitioner attempts to trivialize the distinction between an acquittal and a conviction by arguing that the reputational damage attendant to a criminal prosecution, no less than the stigma of a conviction, creates a risk that a jury might impute the attorney's misconduct to the criminal defendant. We are not persuaded by the petitioner's argument. The fact that Cannatelli's alleged misconduct had not been proven mitigated any concern that the jury would be biased toward the petitioner. In contrast, the fact that Avcollie had not only been charged, but also convicted of murder enhanced the risk that the jury's evaluation of Phillips' criminal case

would be tainted by the jury's repugnance toward his attorney.

Second, and relatedly, Avcollie was convicted of murdering his wife by strangulation, "a crime of violence of the first order of seriousness"; id., 140; and his client, Phillips, was charged with similarly reprehensible crimes of "sexual assault, unlawful restraint and burglary, arising out of a factual scenario of terrible violence against an elderly woman." Id. In the present case, by contrast, Cannatelli was acquitted of the nonviolent integrity based crime of bribery of a witness, whereas the petitioner was charged with violent offenses including, inter alia, burglary, robbery, attempted assault, and carrying a dangerous weapon. While bribery is undoubtedly a serious offense, it was the similarly *violent* nature of the serious offenses in *Phillips* that enhanced the potential for juror bias in that case. See id., 141 (identifying risk that "jurors would identify Avcollie's status as a convicted murderer with his client's status as an accused rapist, kidnapper, and burglar"); id., 140 (identifying potential for bias because Phillips "had to face a jury in a trial for serious and violent criminal offenses, while represented by a convicted murderer").

Third, Avcollie was "a prominent [political] figure" in the judicial district in which both he and his client were prosecuted; id., 117; and, consequently, Avcollie's prosecution and ensuing appeals "had been the subject of widespread publicity in that area . . . ." Id., 140. Unlike Avcollie, there is nothing in the record to suggest that Cannatelli was a notable figure who garnered significant public interest in his criminal case by virtue of his prominence in the community. Accordingly, despite the petitioner's production of a "number of news clippings and articles which referenced the Cannatelli prosecution and/or acquittal," we conclude that the evidence supported the habeas court's findings that "[t]he coverage was minimal" and that Cannatelli's criminal case was "much lower profile" than Avcollie's criminal case.

Fourth, unlike Cannatelli, "Avcollie believed that most of the venirepersons knew of his murder conviction . . . ." *Phillips* v. *Warden*, supra, 220 Conn. 125. Avcollie's belief was indeed substantiated given the widespread publicity surrounding his murder conviction in the judicial district from which Phillips' jury panel was culled. As the court in *Phillips* observed, there was a "real and substantial risk that one or more of [Phillips'] jurors may well have known of Avcollie's murder conviction and viewed [Phillips'] defense through a lens corrupted by that knowledge. Avcollie believed that risk to be a reality. That risk, which was all too apparent to Avcollie . . . demanded no less than that Avcollie . . . simply refrain from representing [Phillips] . . . ." Id., 141. In the present case, by contrast, Cannatelli testified credibly that "he had no

concerns about any of the jurors' ability to serve on the petitioner's case." Nothing in the record supports the petitioner's claim that there was a substantial risk that the jury was aware of Cannatelli's prosecution and would impute his alleged improprieties to the petitioner.

Fifth and finally, the present case is distinguishable from *Phillips* because the jury voir dire conducted by each respective attorney differed regarding the jury's knowledge of the attorney's criminal prosecution. At the petitioner's criminal trial, Cannatelli individually inquired whether each venireperson was familiar, for any reason, with Cannatelli or anyone at his law firm. None of the venirepersons responded affirmatively to this inquiry despite being individually asked and having the opportunity to do so. In *Phillips*, by contrast, Avcollie did not inquire during individual voir dire as to whether each venireperson was familiar with Avcollie for any reason. Rather, the extent of this inquiry in *Phillips* was limited to Avcollie's introductory remarks to the entire panel of venirepersons, when he stated "if there is anything that you know or feel about me that will inhibit your ability to judge this man fairly, then you should so indicate." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 220 Conn. 125.

The petitioner denies that there is any meaningful distinction between Cannatelli's inquiry during individual voir dire and Avcollie's introductory comments to the entire panel of venirepersons. Specifically, the petitioner argues that *Phillips* requires that an attorney who has been prosecuted in the same judicial district as his client must *specifically* inquire during individual voir dire as to each venireperson's knowledge of the attorney's criminal prosecution. Put another way, the petitioner argues that a *general* inquiry as to whether the venireperson is familiar with the attorney *for any reason* is inadequate. Contrary to the petitioner's claim, however, *Phillips* does not require that an attorney specifically inquire about the attorney's criminal prosecution during individual voir dire. In fact, we acknowledged in *Phillips* the inherent flaws of a specific inquiry, namely, the risk that the attorney will inform previously unaware jurors of the fact of the attorney's criminal prosecution and, in so doing, create bias where none may have existed. See id., 144–45.

In light of our holding in *Phillips*, Cannatelli's general inquiry during individual voir dire was entirely appropriate in the present case. Cannatelli asked each venireperson whether he or she was familiar with Cannatelli for any reason, which necessarily was broad enough to include his criminal prosecution. The individual voir dire thus provided each venireperson the opportunity to disclose any knowledge or recollection of Cannatelli's criminal case, and, in turn, it provided Cannatelli and the trial court an opportunity to evaluate each venire-

person's individual response to the general inquiry. Therefore, Cannatelli did not "[dispense] with [the] unique and valuable right" of individual voir dire, which facilitates "the discovery of factors that may predispose a prospective juror to decide a case on legally irrelevant grounds . . . ." (Citations omitted; internal quotation marks omitted.) Id., 146. At the same time, the inquiry did not inform prospective jurors who were otherwise unaware of Cannatelli's circumstances that he had been prosecuted and acquitted of bribery charges. Accordingly, we reject the petitioner's claim that *Phillips* required that Cannatelli specifically inquire about his criminal prosecution during individual voir dire.[3]

In sum, the Appellate Court appropriately distinguished *Phillips* from the present case and properly concluded that the petitioner failed to demonstrate an actual conflict of interest that adversely affected Cannatelli's performance as the petitioner's trial attorney. Accordingly, we affirm the judgment of the Appellate Court.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The court granted the petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly apply *Phillips* v. *Warden*, [supra, 220 Conn. 112], and conclude that the petitioner had failed to demonstrate that the trial attorney had a conflict of interest of constitutional magnitude?" *Rodriguez* v. *Commissioner of Correction*, 304 Conn. 911, 911–12, 40 A.3d 318 (2012).

[2] Insofar as the Appellate Court opinion incorrectly states that "Avcollie never made any such inquiry [as to whether any venireperson had any prior knowledge of him]"; *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 349; we take this opportunity to clarify that Avcollie did state during his general introductory remarks to the panel that any venireperson having prior knowledge of Avcollie should so indicate. *Phillips* v. *Warden*, 23 Conn. App. 63, 68, 579 A.2d 1092 (1990), rev'd, 220 Conn. 112, 595 A.2d 1356 (1991). Avcollie did not, however, pursue this line of questioning during individual voir dire.

[3] To the extent that the petitioner relies upon *Phillips* to suggest that *neither* a *specific* nor a *general* inquiry during individual voir dire would alleviate the risk that the jury would impute Cannatelli's alleged misconduct to the petitioner, we reject this claim and distinguish *Phillips* on its facts.

The petitioner relies on our discussion in *Phillips* of the "classic 'no win' situation"; *Phillips* v. *Warden*, supra, 220 Conn. 144; that resulted from Avcollie's failure to withdraw from Phillips' criminal case. We explained the situation as follows: "Having opted to remain as [Phillips'] lawyer in violation of his duty to withdraw, Avcollie was faced with the insoluble dilemma of whether to raise the fact of his own notorious conviction during the individual voir dire . . . . This was, from [Phillips'] viewpoint, a classic 'no win' situation. If Avcollie did not raise the issue, he exposed his client to the risk that such biased venirepersons would find their way on to the jury. If he did raise the issue, he created the risk that he would inform— or remind—otherwise ignorant or forgetful venirepersons that they were to hear a case in which a convicted murderer would be representing an accused rapist." Id., 144–45.

The petitioner fails to acknowledge that the no win situation we identified in *Phillips* resulted from the unique factual circumstances in that case. As we explained, "[t]his dilemma was inherent in Avcollie's personal situation, and was the inevitable result of the violation of his duty of loyalty to [Phillips]." Id., 145. "It was only because of Avcollie's antecedent violation of his constitutional and ethical duties to [Phillips] that he was confronted with a strategic choice that carried with it only adverse consequences for his client." Id., 147.

In the present case, by contrast, there was no conflict of interest that

required Cannatelli to withdraw from the petitioner's case in the first instance. Cannatelli thus did not confront the strategic dilemma that Avcollie faced in *Phillips* as the result of his failure to withdraw. Accordingly, we reject the petitioner's suggestion that an individual voir dire *in any capacity* was insufficient to ferret out potentially biased jurors.

───────────────────────