FERMIN ADORNO *v.* COMMISSIONER OF
CORRECTION
(AC 20297)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued May 8—officially released October 9, 2001

*Mary Anne Royle*, special public defender, for the appellant (petitioner).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, and *Timothy J. Liston*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Fermin Adorno, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus in which he alleged ineffective assistance of trial counsel. On appeal, the petitioner claims that the court improperly dismissed the petition because (1) counsel was ineffective at the suppression hearing (a) for failing to investigate his educational background, (b) for failing to introduce expert testimony regarding his ability to waive his *Miranda*[1] rights and (c) for compelling him to testify; (2) counsel was ineffective at the trial (a) for

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

failing to cross-examine effectively a state's key witness and (b) for failing to develop a credible defense; (3) counsel was ineffective at the sentencing hearing for failing to produce mitigating evidence; and (4) counsel was ineffective due to a conflict of interest. We affirm the judgment of the habeas court.

The facts giving rise to this case are set forth in *State v. Adorno*, 45 Conn. App. 187, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997). "On August 13, 1992, at approximately 3 a.m., the [petitioner] and several others drove to the apartment of Delmar Johnson, kicked in his door and fired shots into his apartment, killing him. On August 21, 1992, the police arrested the [petitioner] and took him into police custody. While in custody, the [petitioner] gave an oral statement indicating that on August 13, 1992, he had gone to Portland with a group of five men in two cars, had kicked in Johnson's door and had started shooting." Id., 188–89. The petitioner was thereafter tried and convicted. On direct appeal, we upheld the petitioner's conviction of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and felony murder in violation of General Statutes § 53a-54c.

Subsequently, the petitioner sought a writ of habeas corpus, and the habeas court held a hearing on the matter. The petitioner alleged that his trial counsel was ineffective in several instances during the suppression hearing, the trial and the sentencing hearing. In its memorandum of decision, which was filed on November 12, 1999, the court dismissed his petition. The court thereafter granted the petitioner's petition for certification to appeal. This appeal followed.

Before addressing each of the petitioner's claims of ineffective assistance of counsel, we note that our standard of review of a habeas court's decision regarding such claims is well settled. "In a habeas appeal, this

court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 316, 759 A.2d 118 (2000).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel . . . . In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . . *Minnifield* v. *Commissioner of Correction*, [62 Conn. App. 68, 71–72, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001)].

"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Therefore, [a] habeas court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if the claim may be disposed of on the ground of an insufficient showing of prejudice." (Citations omitted; internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 299–301, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

Mindful of those standards, we now turn to examine each of the petitioner's claims. Additional facts will be set forth as necessary to resolve the claims.

I

The petitioner first claims that trial counsel was ineffective at the suppression hearing because he made a number of prejudicial errors. Specifically, the petitioner claims that counsel was ineffective (1) for failing to investigate his educational background, (2) for failing

to introduce expert testimony regarding his ability to waive his *Miranda* rights and (3) for compelling him to testify.

### A

We begin with the petitioner's claim that counsel was ineffective because he failed to investigate the petitioner's educational and mental background, thereby prejudicing him at the suppression hearing. We disagree.

The following additional facts are relevant to the petitioner's claim. After the police arrested the petitioner, they advised him of his *Miranda* rights. Nevertheless, he gave a statement to the police indicating that "[o]n August 13, 1992, he had gone to Portland with a group of five men in two cars, had kicked in [the victim's] door and had started shooting." *State* v. *Adorno*, supra, 45 Conn. App. 189. The petitioner's trial counsel, who assumed responsibility for the case prior to the trial,[2] knew that the statement to police could be very damaging. Counsel spoke with the petitioner about the statement and the surrounding circumstances under which it had been taken. The petitioner informed counsel that he had not understood that he was waiving his *Miranda* rights when he gave the police his statement. Counsel therefore filed a motion to suppress the statement, claiming that he had not made it voluntarily. When the petitioner testified at the suppression hearing, he was asked to read a police report. The petitioner, however, had difficulty reading the report. As a result, the court granted a recess to allow the petitioner to read the report. His counsel, at the time, was unaware that the petitioner had only a seventh grade education.

[2] Originally, the petitioner was represented by public defender Richard F. Kelly until April 11, 1994. At that time, representation was transferred to special public defender John Bunce. All references to trial counsel in this opinion refer to Bunce. We also note that, before the transfer, investigative work had been completed by Kelly and that such information was conveyed in the file to Bunce.

During the habeas hearing, counsel testified that he was uncertain as to whether he had the petitioner's school records prior to the suppression hearing. He noted that such records would not have altered his estimation of the petitioner's reading ability. On the basis of his own judgment after meeting with the petitioner several times, counsel believed that the petitioner, as a witness, would be able to read a simple document and answer uncomplicated questions. The court concluded that even if counsel had investigated the petitioner's educational and mental background, it would not have altered the result of the suppression hearing and, consequently, the petitioner had failed to show prejudice as required under the second prong of *Strickland.*

After reviewing the record, we agree with the court's determination that the petitioner failed to show prejudice. The petitioner did not demonstrate that there was a reasonable probability that, but for counsel's failure to discover the petitioner's educational background, the result of the suppression hearing would have been different. With respect to whether the petitioner's statements were made voluntarily, our Supreme Court has repeatedly stated that "a low level of education, although a factor to be considered, is not in and of itself, determinative. . . . see *State* v. *Correa,* 241 Conn. 322, 335, 340, 696 A.2d 944 (1997) (admission of statements by suspect with only five years of education); *State* v. *Madera,* [210 Conn. 22, 43–44, 554 A.2d 263 (1989)] (admission of statements by suspect who functioned at third grade level, could not read or write but could write his name, identify numbers and do some counting); *State* v. *Hernandez,* [204 Conn. 377, 397, 528 A.2d 794 (1987)] (admission of statements by suspect with IQ in borderline mentally retarded range); *State* v. *Toste,* [198 Conn. 573, 581, 504 A.2d 1036 (1986)] (admission of statements by suspect with low IQ, who functioned

at sixth or seventh grade level)." (Citation omitted; internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 322, 715 A.2d 1 (1998). We conclude, therefore, that the court properly determined that the petitioner did not demonstrate prejudice resulting from counsel's failure to investigate his educational background.

### B

The petitioner also claims that counsel was ineffective because he failed to introduce expert testimony at the suppression hearing concerning the petitioner's ability to waive his *Miranda* rights. We are not persuaded.

During the habeas hearing, the petitioner offered no evidence regarding the nature of the testimony that an expert would have produced if one had been called at the suppression hearing. "The failure of the petitioner to offer evidence as to what [a witness] would have testified is fatal to his claim." *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 623, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999). "The petitioner seeks to have us use hindsight with [regard] to his counsel's decision not to call the witnesses to testify. We will not do so. We have stated that the presentation of testimonial evidence is a matter of trial strategy. . . . The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) Id., 624. In the absence of such a showing, we are unable to conclude that the petitioner was prejudiced by counsel's failure to call an expert witness.

### C

In his last claim regarding the suppression hearing, the petitioner asserts that counsel was ineffective

because he compelled the petitioner to testify. We do not agree.

Counsel met with the petitioner several times before the suppression hearing to prepare for it, including the day of the hearing. In their last meeting, counsel strongly suggested to the petitioner that he would have to testify to rebut several police officers' testimony concerning the circumstances under which the petitioner's statement had been taken. The effort, however, later proved to be unsuccessful, as the court denied the petitioner's motion to suppress. The habeas court determined that, under the circumstances, counsel's actions did not amount to ineffective assistance.

On the basis of our review of the record, we conclude that the petitioner's claim of ineffective assistance of counsel cannot succeed, as he failed to show prejudice with respect to this matter. The petitioner failed to demonstrate that there is a reasonable probability that, had he not testified, the result of the suppression hearing would have been different. The officers still would have testified even if we assume that the petitioner would not have testified. The petitioner's testimony, in essence, was the only viable means to challenge the officers' testimony. In the absence of the petitioner's testimony, the officers' testimony would have been unchallenged. We agree with the habeas court that the petitioner did not receive ineffective assistance of counsel with respect to his decision to testify.

II

The petitioner also claims that trial counsel was ineffective at the trial because he (a) failed to cross-examine effectively a state's key witness and (b) failed to develop a credible defense.[3]

---

[3] The petitioner also claims that counsel was ineffective at trial for failing to take an exception to the court's jury charge, failing to object to allegedly improper testimony, failing to request a limiting instruction concerning the use of other crimes as evidence and failing to preserve the issue of insufficient evidence for direct appeal by not filing a motion for a directed verdict.

## A

The petitioner claims that trial counsel was ineffective at the trial for failing to cross-examine effectively Wilson Ortiz, a key witness for the state. In particular, the petitioner asserts that counsel failed to impeach Ortiz's testimony with a prior conviction for tampering with evidence and with statements that had been given to the police by two witnesses.[4] We are unpersuaded.

The state called Ortiz as a witness during the petitioner's criminal trial. Ortiz gave information regarding the petitioner's gang involvement and the background of the victim's shooting. Specifically, Ortiz, who also was a member of the gang, indicated to the petitioner that the victim had assaulted Ortiz a few weeks prior to the shooting and that retaliation was necessary. "Ortiz . . . testified . . . that he told the [petitioner] and other members of the [petitioner's] gang about these assaults two weeks before the shooting and that the [petitioner] had been present while a car belonging to another acquaintance had been damaged while in the vicinity of the victim's apartment." *State* v. *Adorno*, supra, 45 Conn. App. 192.

The habeas court, however, did not discuss in detail those claims, some of which were not even mentioned in the petition for habeas corpus. In addition, the petitioner failed to file a motion for articulation. "It is the appellant's burden to provide an adequate record for review. Practice Book [§ 60-5] . . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 688–89, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). We decline, therefore, to review those claims.

[4] The petitioner also claims that there were several other witnesses whose statements would have been beneficial in cross-examining Ortiz at trial. At the habeas hearing, the petitioner failed to introduce any evidence regarding what testimony those other witnesses would have provided. Failure to offer evidence on that matter is fatal to his claim. See *Nieves* v. *Commissioner of Correction*, supra, 51 Conn. App. 623.

Counsel realized that Ortiz's testimony was very damaging and sought to impeach his credibility. To that end, counsel elicited from Ortiz before the jury that he had been arrested and convicted on several drug charges. Counsel, however, did not question Ortiz about his prior conviction for tampering with evidence. Counsel also did not attempt to admit statements of other witnesses to contradict Ortiz's testimony.

During the habeas hearing, the petitioner submitted information derived from two witnesses, Charles Lewis and Zeno Tounazis, each of whom gave statements to the police. Their statements concerned the incidents that led to the victim's death. Those statements, according to the petitioner, provided discrediting information against Ortiz and exculpatory information. The court examined the statements and determined that neither Lewis' nor Tounazis' statements exhibited such information. Ultimately, the court concluded that counsel was not ineffective for failing to impeach Ortiz's testimony with the conviction for tampering with evidence or with Lewis' and Tounazis' statements.

A careful examination of the record reveals that the petitioner failed to show prejudice as required under *Strickland*. With respect to Ortiz's conviction for tampering with evidence, the petitioner is correct in pointing out that counsel did not mention that conviction to discredit Ortiz. The petitioner, however, fails to acknowledge that counsel impeached Ortiz with several other drug convictions. Even if counsel had raised the conviction for tampering with evidence, it is hard to imagine that Ortiz's testimony would have been further discredited. Likewise, as to Lewis' and Tounazis' statements, we cannot discern how their statements would have altered the result. The statements neither contradict Ortiz's testimony nor cast a significant doubt on the petitioner's guilt. We conclude, therefore, that counsel's cross-examination of Ortiz was not ineffective, regard-

less of his failure to impeach Ortiz's testimony with a conviction for tampering with evidence or with Lewis' and Tounazis' statements.

### B

Next, the petitioner claims that trial counsel was ineffective at the trial for failing to develop a credible defense. Specifically, the petitioner alleges that counsel failed to submit a jury instruction on the element of unlawful entry in the crime of burglary. We are not persuaded.

At the petitioner's criminal trial, the state offered into evidence his confession in which he admitted to kicking in the door to the victim's apartment and firing shots therein. Trial counsel decided not to contest the "entry" element of burglary. Counsel therefore did not file a request to charge or except to the jury charge.

An expert witness testified at the habeas hearing on behalf of the petitioner. The expert noted that, in his opinion, trial counsel's failure to request a jury instruction emphasizing the entry element affected the outcome of our review on direct appeal. Such an omission, according to the expert, was deficient because it did not keep the jury focused on that element and, on direct appeal, this court's review would have been more scrutinizing. In response, trial counsel informed the habeas court that, on the basis of diagrams and pictures of the crime scene, he did not believe that the petitioner could have shot the victim from outside the apartment. In light of our decision in *State* v. *Adorno*, supra, 45 Conn. App. 194–96, the court determined that the petitioner failed to prove prejudice.

We agree with the habeas court. Assuming that counsel had filed a request to charge, it would not have altered the result. The petitioner claimed on direct appeal to this court that the trial court improperly

instructed the jury on the crime of burglary. The petitioner sought review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[5] but we determined that the court's instruction was constitutionally adequate. *State* v. *Adorno*, supra, 45 Conn. App. 196–98. The petitioner, in addition, claimed on direct appeal that the evidence was insufficient at trial to support his burglary conviction in that the jury could not reasonably have concluded that the state had proved the "entry" element. We held that "it was reasonable for the jury to conclude that at least some part of the defendant's body, his hand or foot for example, intruded into the victim's apartment. Common sense dictates that it would be reasonable to conclude that, in using the force necessary to kick open a locked door, the momentum would carry the defendant or one of his companions into the victim's apartment." Id., 195. Accordingly, the petitioner failed to show that he was prejudiced by his counsel's failure to submit a jury instruction on the entry element of burglary.

### III

With regard to the sentencing hearing, the petitioner claims that counsel was ineffective for failing to produce mitigating evidence. Particularly, the petitioner claims that counsel did not present any evidence that humanized him, such as evidence of his low IQ, his low level of education and his susceptibility to being influenced by others. The petitioner alleges that as a

---

[5] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

result of such an omission, the court imposed the maximum sentence. That claim is without merit.

The habeas court found that, contrary to the petitioner's claim, counsel had presented humanizing evidence at the sentencing hearing. The court therefore determined that, but for counsel's performance, the result of the sentencing hearing would have been the same.

After conducting a thorough review of the record, we conclude that there was no probability that counsel's conduct at the sentencing hearing prejudiced the petitioner, as required under *Strickland* for a habeas petition to succeed. Prior to the sentencing hearing, counsel reviewed the presentence investigation report. Counsel strongly emphasized to the sentencing court that it should look at the petitioner as an individual. Counsel urged the court to take into account the petitioner's lack of education, his family problems, his drug problems, his youth and his susceptibility to being influenced.[6] We cannot envision what more counsel could have said to plead for leniency from the court. The court nonetheless gave the petitioner the maximum sentence and, in doing so, noted that it would not be lenient in light of the callous nature of the crime; the defendant shot the victim in his own home while he was sleeping.

---

[6] Counsel importuned the court as follows: "The presentence investigation takes pictures of the same kind of people that we so often see in this courtroom. People come from troubled, broken families, growing up in projects, not making it in school, some drug abuse. It's what we see all too often here.

"And the problem here is that [the petitioner] found nothing that society offered to him, to give himself an anchor, to give himself a way of becoming part of that society. What he found instead was a gang. A group of other people similar to him. Some older; some approximately younger. . . . [The petitioner] at the time was seventeen years . . . old.

"And this person, this child who could not find a home in society, had found a home with this other group of people. He went with that other group of people, went to someone else's house where the evidence at least suggests he was directed to go. And did what he was told to do."

Under those circumstances, counsel's performance at the sentencing hearing cannot be viewed as relevant to the court's decision to impose the maximum period of incarceration. *Santiago* v. *Warden*, 27 Conn. App. 780, 785–86, 609 A.2d 1023 (imposition of maximum period of incarceration not relevant to claim of ineffective assistance of counsel where counsel asked court to consider petitioner's troubled background), cert. denied, 223 Conn. 916, 614 A.2d 825 (1992). We conclude that counsel's performance at the petitioner's sentencing hearing did not amount to ineffective assistance.

IV

The petitioner's final claim is that counsel was ineffective because, while representing the petitioner, he engaged in illegal conduct in unrelated matters, thus resulting in a conflict of interest. In other words, the petitioner claims that simply because counsel acted illegally in unrelated matters while representing the petitioner, he also must have acted improperly in representing the petitioner. We do not agree.

Counsel represented the petitioner from April, 1994, through December, 1994. At the same time, counsel was involved with legal problems in unrelated matters concerning breach of his fiduciary duties to three other clients. Between 1992 and 1997, counsel acted as the executor or trustee of three different estates. Counsel misappropriated approximately $1 million of the funds from the estates. As a result, in 1997, federal authorities charged counsel with wire fraud and tax fraud to which he pleaded guilty. Counsel was thereafter disbarred.

Counsel testified at the habeas hearing that, regardless of those legal problems, they did not impair his ability to represent the petitioner diligently. The court concluded that counsel was not ineffective on the basis of those allegations of conflict of interest.

"Our state and federal constitutions guarantee a criminal defendant the right to assistance of counsel. U.S. Const., amend. VI; Conn. Const., art. I, § 8. As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996). We must determine, therefore, whether a conflict of interest existed.

"Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where, however, the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance. . . . *Phillips* v. *Warden*, 220 Conn. 112, 132–33, 595 A.2d 1356 (1991).

"On appellate review, the historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . Id., 131. When, as in this case, those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review. See id.; *McIver* v. *Warden*, 28 Conn. App. 195, 203, 612 A.2d 103, cert. denied, 224 Conn. 906, 615 A.2d 1048 (1992). . . . *Blakeney* v. *Commissioner of Correction*, 47 Conn. App.

568, 583–84, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998)." (Internal quotation marks omitted.) *Whyte* v. *Commissioner of Correction*, 53 Conn. App. 678, 685–86, 736 A.2d 145, cert. denied, 250 Conn. 920, 738 A.2d 663 (1999).

In the present case, the petitioner claims a conflict of interest. As such, the petitioner must prove that a conflict existed and that it prejudiced him. The petitioner, however, has failed to demonstrate that a conflict of interest existed. The petitioner attempts to identify the conflict of interest by claiming that because counsel acted illegally in an unrelated matter while representing the petitioner, he also must have acted improperly in representing the petitioner. The petitioner fails to cite any authority for such a tenuous proposition. We acknowledge, however, that our Supreme Court has recognized that the concept of conflict of interest can have broad contours. " 'While the right to conflict-free representation typically is implicated in cases involving representation of criminal codefendants by a single attorney; see, e.g., *Holloway* v. *Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978); G. Lowenthal, 'Joint Representation in Criminal Cases: A Critical Appraisal,' 64 Va. L. Rev. 939 (1978); it is equally applicable in other cases where a conflict of interest may impair an attorney's ability to represent his client effectively.' " *Phillips* v. *Warden*, supra, 220 Conn. 134–35. Although counsel here acted illegally in unrelated matters, we cannot view such conduct as impairing his ability to represent effectively the petitioner. To hold otherwise would overly expand the contours of the concept of a conflict of interest. We conclude, on the basis of the facts of this case, that counsel's performance was not ineffective due to allegations of a conflict of interest.[7]

[7] The petitioner also claims that, viewed cumulatively, counsel's actions and omissions amounted to ineffective assistance. That claim is without merit. Our Supreme Court has declined "to create a new constitutional claim

The judgment is affirmed.

in which the totality of alleged constitutional error is greater than the sum of its parts." *State* v. *Tillman,* 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

