******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KAREEM HEDGE *v.* COMMISSIONER
OF CORRECTION
(AC 34681)

Lavine, Keller and Flynn, Js.

*Argued March 13—officially released August 5, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*William A. Snider*, assigned counsel, for the appellant (petitioner).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Craig P. Nowak*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Kareem Hedge, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erroneously (1) determined that the petitioner's trial counsel did not have an actual conflict of interest that rendered his representation ineffective, (2) failed to examine whether the petitioner's trial counsel had a potential conflict of interest that rendered his representation ineffective, and (3) dismissed the petitioner's due process claim concerning the trial court's alleged failure to properly canvass the petitioner and to inquire into a possible conflict of interest. We affirm the judgment of the habeas court.

The following facts, as found by the habeas court, and procedural history are relevant to this appeal. On March 13, 2003, the petitioner was arrested and charged with a variety of offenses by way of a two part information.[1] Attorney Richard Silverstein's firm agreed to represent the petitioner on those charges on June 19, 2003.

Prior to his representation of the petitioner, Silverstein was arrested and charged with drug related crimes on two separate occasions. In 1999, Silverstein was arrested and charged with one or more drug offenses. Those charges were dismissed following Silverstein's completion of a diversionary program. In January, 2003, Silverstein was arrested and charged with possession of illegal drugs. The trial court granted Silverstein entry into an accelerated rehabilitation program on August 27, 2003, a supervised diversionary program that requires no admission of guilt. The charges against him were dismissed following his completion of the program.

Following Silverstein's January, 2003 arrest, the New Haven judicial district grievance panel initiated proceedings against him. On June 23, 2003, the court, *Silbert, J.*, issued an order that required Silverstein (1) to inform his current and prospective clients in writing of the criminal charges presently pending against him, and (2) to inform his clients in writing in any case in which he was counsel of record that proceeded to jury selection, that the clients could require him to disclose to prospective jurors during voir dire the pendency of his own criminal charges.[2]

Despite Judge Silbert's order, Silverstein failed to provide any notice to the petitioner regarding Silverstein's pending criminal charges. During a pretrial hearing on the eve of jury selection in January, 2004, the petitioner informed the court that he had learned earlier that day of the charges pending against Silverstein and expressed concern about retaining Silverstein as his counsel. The court explained to the petitioner that he could require Silverstein to inform

prospective jurors during voir dire of the charges pending against him.[3] The petitioner made no such request at any time before or during voir dire, although Silverstein did inquire generally before individual voir dire whether any prospective juror knew of him. No eventual juror acknowledged recognizing Silverstein.

A jury found the petitioner guilty of all the charges alleged in the first part of the information on January 27, 2004, and the court sentenced the petitioner to a total effective sentence of twenty-three years incarceration on April 2, 2004. Following a trial to the court on the charge in the second part of the information, the court sentenced the petitioner to five years incarceration, which was to run concurrently with the twenty-three year sentence on October 21, 2004. This court affirmed the trial court's judgment on appeal. *State* v. *Hedge*, 93 Conn. App. 693, 695, 890 A.2d 612, cert. denied, 227 Conn. 930, 896 A.2d 102 (2006).

On December 12, 2011, the petitioner filed the fourth amended petition for a writ of habeas corpus, which is at issue in this appeal.[4] The amended petition contains four counts. Count one alleges that Silverstein provided ineffective assistance of counsel by failing to abide by Judge Silbert's order and having an actual conflict of interest. Count two alleges that Silverstein provided ineffective assistance of counsel due to inadequate trial preparation and performance. Count three alleges that the trial court violated the petitioner's due process rights by failing to inquire into the possibility that Silverstein had a conflict of interest and to canvass the petitioner regarding Silverstein's prior arrests, possible conflict of interest, and Judge Silbert's order. Count four alleges that the petitioner's appellate counsel provided ineffective assistance of counsel due to his failure to raise certain claims in the petitioner's direct appeal. The respondent, the Commissioner of Correction, filed a return to the petition on October 17, 2011, denying the petitioner's allegations and raising the special defense of procedural default with regard to the petitioner's claims in counts one and two.[5]

Following a trial to the court, the habeas court issued a comprehensive and well reasoned memorandum of decision denying the petition on April 27, 2012. First, the court determined that Silverstein did not have a conflict of interest which rendered his assistance ineffective because (1) Silverstein was not convicted of the crimes charged against him, (2) the publicity surrounding Silverstein's 2003 arrest and the court's granting of his entry into accelerated rehabilitation was minimal and transitory, (3) Silverstein's arrest occurred in New Haven and the petitioner's trial took place in Bridgeport, a city in which Silverstein had no significant reputation and to which he had no connection, and (4) the trial court had informed the petitioner that he could compel Silverstein to inquire whether prospective

jurors had knowledge of his pending legal issues. Although the court found that Silverstein failed to follow Judge Silbert's order, the court determined that the breach of his ethical duty to the court did not give rise to the creation of a conflict of interest in representing the petitioner in this case. Second, the court determined that the petitioner failed to submit sufficient evidence to prove that Silverstein's trial preparation and performance prejudiced the petitioner or fell below the standard of care required under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Third, the court determined that, because there was no conflict of interest between the petitioner and Silverstein, the trial court did not err by failing to inquire into a possible conflict of interest and to canvass the petitioner regarding his rights under Judge Silbert's order. Fourth, the court determined that the petitioner's ineffective assistance of appellate counsel claim failed because the petitioner did not show a reasonable probability that the issues his counsel failed to raise on appeal would have been successful.[6]

The petitioner subsequently filed a petition for certification to appeal from the court's judgment on all four counts, which was granted on May 8, 2012. This appeal followed, wherein the petitioner raised claims only as to counts one and three of his fourth amended petition for a writ of habeas corpus. Additional facts will be set forth as necessary.

I

First, the petitioner claims that the court erred in concluding that Silverstein did not have an actual conflict of interest with the petitioner that rendered his representation ineffective. We disagree.

We begin by setting forth the relevant standard of review governing ineffective assistance of counsel claims based on an actual conflict of interest. " 'The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel.' . . . *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 582, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005). 'As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest.' . . . *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 194, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001). Thus, '[t]he underlying right to conflict free representation is effective assistance of counsel.' *State* v. *Rodriguez*, [61 Conn. App. 700, 706, 767 A.2d 756 (2001)].

" 'In a case of a claimed conflict of interest . . . in order to establish a violation of [his constitutional rights] the [petitioner] has a two-pronged task. He must

establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance.' . . . *Phillips* v. *Warden*, [220 Conn. 112, 132–33, 595 A.2d 1356 (1991)]; *Anderson* v. *Commissioner of Correction*, 127 Conn. App. 538, 549, 15 A.3d 658 (2011), [aff'd, 308 Conn. 456, 64 A.3d 325 (2013)]. 'Unlike other claims of ineffective assistance of counsel, where a petitioner claims that his counsel's performance was deficient because of an actual conflict of interest, prejudice does not need to be established.' *Zollo* v. *Commissioner of Correction*, 93 Conn. App. 755, 757, 890 A.2d 120, cert. denied, 278 Conn. 904, 896 A.2d 108 (2006); see also *Phillips* v. *Warden*, supra, 133–34. Instead, '[w]here there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties.' . . . *Phillips* v. *Warden*, supra, 133; *Anderson* v. *Commissioner of Correction*, supra, 549; see *Strickland* v. *Washington*, [supra, 466 U.S. 692] ('[p]rejudice is presumed . . . if the [petitioner] demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance' . . .); *State* v. *Vega*, 259 Conn. 374, 387, 788 A.2d 1221 (same), cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

" 'On appellate review, the historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . When . . . those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review.' . . . *Adorno* v. *Commissioner of Correction*, supra, 66 Conn. App. 194." *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 342–44, 27 A.3d 404 (2011), aff'd, 312 Conn. 345,        A.3d      (2014).

The petitioner argues that an actual conflict of interest existed in the underlying case pursuant to *Phillips* v. *Warden*, supra, 220 Conn. 112. In *Phillips*, John M. Phillips was convicted of sexual assault, unlawful restraint and burglary. Id., 114. Phillips was represented by Attorney Bernard L. Avcollie, who had been convicted of murdering his own wife prior to representing Phillips. Id. Avcollie's trial and conviction occurred in the same judicial district where Phillips' trial was held, and Avcollie was appealing his conviction while representing Phillips. Id., 116–18. Avcollie's indictment, trial, conviction, and ensuing appeals received "widespread publicity" for over seven years. Id., 140. In addition, Avcollie believed that the prospective jurors knew of his conviction, but he decided not to specifically ask them to confirm his suspicions during jury selection. Id., 125. Phillips filed a petition for a writ of habeas corpus claiming that he had been denied effective assistance of counsel due to an actual conflict of interest.

Id., 116–17. The habeas court denied the petition, and this court affirmed that judgment on appeal. Id., 117.

Our Supreme Court reversed this court's judgment, holding that an actual conflict of interest may exist when there is an "impermissible risk that the jury will identify [the attorney's] conduct with that of [the] client. . . . Thus, an attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors personal to [the attorney] that are inconsistent, diverse or otherwise discordant with [the interests] of [the] client . . . ." (Citations omitted; internal quotation marks omitted.) Id., 138–39. The court then concluded that an actual conflict existed, noting that "[s]urely no other criminal defendant in the history of Connecticut jurisprudence—indeed, in the history of American jurisprudence—has ever had to face a jury in a trial for serious and violent criminal offenses, while represented by a convicted murderer, whose conviction was likely to have been known by the jurors, in the judicial district where both the murder and conviction took place, where both the murder and its ensuing legal aftermath had been widely reported in the press, and when the murderer was literally on his own way to prison. Surely, no other attorney in the history of Connecticut or American jurisprudence has ever brought with him to the criminal jury courtroom the potential for prejudice to his client that Avcollie brought to the . . . courtroom . . . . Under these unique factual circumstances, we are constrained to conclude that there was a constitutionally impermissible risk that [Phillips'] jurors would identify Avcollie's status as a convicted murderer with his client's status as an accused rapist, kidnapper and burglar, and that they would transfer to [Phillips] the distaste or revulsion that they may have felt for his lawyer." (Footnote omitted.) Id., 140–41. In reaching its conclusion, the court noted that the facts of the case did not involve "a conflict of interest in the classic sense of separate clashing interests . . . ." Id., 139. Instead, a conflict of interest existed due to the "unique facts" of the case. Id.; see also *State* v. *Thompson*, 118 Conn. App. 140, 149, 983 A.2d 20 (2009), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010).

Our Supreme Court recently applied the reasoning of *Phillips* to a similar case concerning an ineffective assistance of counsel claim based on an actual conflict of interest. In *Rodriguez* v. *Commissioner of Correction*, 312 Conn. 345, 348–49, A.3d (2014), Eddie Rodriguez was convicted of burglary in the first degree, attempt to commit assault in the first degree, robbery in the first degree, interfering with an officer, and carrying a dangerous weapon. He was represented by Attorney Frank Cannatelli, who at the time he filed his appearance on behalf of Rodriguez had bribery charges pending against him, but who was acquitted before the Rodriguez trial began.[7] Id., 348. Cannatelli's

prosecution occurred in the same judicial district as Rodriguez' trial. Id. Prior to jury selection, Rodriguez expressed concern to the trial court that Cannatelli's prosecution created a conflict of interest. Id. The trial court subsequently determined that no conflict existed. Id. Rodriguez was found guilty by a jury on all charges, and this court affirmed the trial court's judgment. Id., 349.

Subsequently, Rodriguez filed a petition for a writ of habeas corpus arguing that Cannatelli's prosecution created an actual conflict of interest pursuant to *Phillips*.[8] Id. The habeas court denied the petition on the basis of its findings that the press coverage of Cannatelli's prosecution was minimal and that Cannatelli generally had asked each prospective juror during individual voir dire whether he or she recognized him. Id., 349–50. This court affirmed the judgment of the habeas court. Id., 351.

On appeal, our Supreme Court affirmed this court's judgment. The court agreed that the "impermissible risk" articulated in *Phillips* that the jury would impute Cannatelli's conduct to Rodriguez was nonexistent and held that Cannatelli did not have a conflict of interest because (1) Cannatelli was acquitted, not convicted, of his criminal charges; (2) Cannatelli's charges were nonviolent in nature while Rodriguez' crimes involved severe violence; (3) Cannatelli was not a popular political figure and there was no evidence suggesting that his case generated significant public interest or publicity; (4) there was no evidence that Cannatelli believed that the prospective jurors knew of his arrest and prosecution; and (5) Cannatelli generally inquired during individual voir dire whether any eventual juror recognized him or his law firm. Id., 356–58.

Our Supreme Court established in *Phillips* that there is no per se rule that "a conflict of interest arises any time a lawyer who has been prosecuted or convicted of a crime subsequently represents a criminal defendant." *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 348. To determine whether a conflict of interest exists here, we must consider "the facts of the particular case, viewed as of the time of [the] counsel's conduct." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 220 Conn. 134. Accordingly, we must undertake a careful consideration of the facts in the present case to determine whether a conflict of interest existed. See *Rodriguez* v. *Commissioner of Correction*, supra, 348.

In the present case, the habeas court determined that the "impermissible risk" articulated in *Phillips* did not exist and, accordingly, that Silverstein did not have an actual conflict of interest. The court distinguished the facts of the underlying case from *Phillips* in four ways. First, Silverstein was granted entry into the accelerated rehabilitation program, which did not require an admis-

sion of guilt. Second, the publicity surrounding Silverstein's 2003 arrest and his being granted accelerated rehabilitation was minimal, consisting of three on-line articles. Third, Silverstein's arrest occurred in New Haven, whereas the petitioner's case was tried in Bridgeport, a city with which Silverstein had no significant relationship. Fourth, the trial court had informed the petitioner that he could compel Silverstein, pursuant to Judge Silbert's order, to inquire whether prospective jurors knew of his legal issues to identify jurors who may have a bias against him.

After careful consideration of the facts in the present case, we agree with the habeas court that the impermissible risk articulated in *Phillips* was absent and that there was no actual conflict of interest that rendered Silverstein's representation of the petitioner ineffective. First, the publicity of Silverstein's 2003 arrest and related proceedings was minimal compared with Avcollie's media coverage in *Phillips*. Here, only a handful of on-line newspaper articles covered Silverstein's 2003 arrest and the court's granting of his entry into the accelerated rehabilitation program.[9] See also *Rodriguez* v. *Commissioner of Correction*, supra, 312 Conn. 357 (" 'number of newspaper clippings and articles' " referencing attorney's prosecution and acquittal did not amount to significant publicity). Further, Silverstein's arrest and entry into accelerated rehabilitation received media coverage over the course of approximately one year, but Avcollie's proceedings and related media coverage lasted over seven years. The petitioner argues that this court should take into account Silverstein's prior arrest and the resolution of that case in 1999 in conjunction with his 2003 arrest and being granted entry into accelerated rehabilitation, creating a continuous four year period during which Silverstein combatted legal problems. We find this unavailing, as the 1999 arrest was an isolated incident that did not have ongoing proceedings or coverage after its resolution upon Silverstein's completion of a diversionary program in 1999.

Second, unlike the facts in *Phillips*, Silverstein's 2003 arrest occurred in a different judicial district than that in which the petitioner was tried and convicted. Silverstein's arrest occurred in New Haven, but the petitioner's case was tried in Bridgeport. Moreover, Silverstein was not a well-known public figure like Avcollie. See id., 357–58 (fact that attorney was not prominent public figure factored into conclusion that no conflict existed). Third, unlike the facts in *Phillips*, Silverstein was never convicted of the crimes charged against him. Silverstein was granted entry into an accelerated rehabilitation program, which did not require a lengthy and publicized trial or an admission of guilt. The fact that Silverstein was never tried and found guilty "mitigate[s] any concern that the jury would [have been] biased toward the petitioner." Id., 356. Furthermore, there was minimal overlap between Silverstein's

proceedings and the petitioner's trial. Fourth, although both Silverstein and the petitioner were charged with drug related crimes, none of the charges involved violent crimes. As our Supreme Court explained in *Rodriguez*, "it was the similarly *violent* nature of the serious offenses in *Phillips* that enhanced the potential for juror bias in that case." (Emphasis in original.) Id., 357. Finally, unlike the facts in *Phillips*, there is no evidence showing that Silverstein believed that the prospective jurors knew of his criminal charges. See id., 358 (fact that attorney did not believe prospective jurors had knowledge of his criminal charges factored into conclusion that no conflict existed).

We acknowledge that, unlike the facts in *Rodriguez*, Silverstein did not generally inquire during individual voir dire whether any prospective juror recognized him. Silverstein did, however, generally instruct all prospective jurors before individual voir dire to alert the court if any of them recognized him, and the court individually asked every eventual juror during individual voir dire whether he or she had any potential bias in the case. As a result, Silverstein's failure to utilize individual voir dire to further confirm that the individual prospective jurors were not prejudiced does not undermine the reasons previously discussed supporting our conclusion that Silverstein did not have an actual conflict of interest.

Before concluding our discussion, we briefly address the petitioner's argument that the trial court failed to explain adequately Judge Silbert's order to him and improperly recommended against instructing Silverstein to probe prospective jurors about the charges against Silverstein. This argument is immaterial because the habeas court's reliance on the trial court's discussion with the petitioner regarding Judge Silbert's order was misplaced. Judge Silbert's order appears to have been intended to protect Silverstein's clients from jurors who were biased by requiring a prophylactic inquiry to discover existing conflicts of interest. The protection offered by the order would only be beneficial if an actual conflict of interest existed. The petitioner's alleged lack of knowledge regarding his authority under the order and his failure to exercise that authority in no way impacted the existence of a conflict of interest for Silverstein.[10] As we have determined, Silverstein did not have a conflict of interest in this case and any inadequacy or impropriety in the trial court's explanation of the petitioner's rights under Judge Silbert's order is inconsequential to that issue.

II

Second, the petitioner claims that the habeas court improperly failed to inquire whether a potential conflict of interest existed after it determined that Silverstein did not have an actual conflict of interest. The petitioner failed to raise this claim in his fourth amended petition

for a writ of habeas corpus or before the habeas court. "It is well established that [w]e do not entertain claims not raised before the habeas court but raised for the first time on appeal." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 369, 90 A.3d 368 (2014). "[I]t is axiomatic that a petitioner is bound by his petition. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . Having not raised [an] issue before the habeas court, [a] petitioner is barred from raising it on appeal. . . . This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) Id., 367; see also *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 351 (no review when petitioner raised claim for first time on appeal). Accordingly, we decline to review this claim on appeal.

III

Finally, the petitioner claims that the habeas court erred in dismissing his due process claim alleging that the trial court's failure to properly canvass him and to inquire into Silverstein's alleged conflict of interest denied him the opportunity to make a knowing and voluntary waiver of his right to conflict free representation. The petitioner's claim is immaterial because Silverstein did not have an actual conflict of interest. It would be incongruous to vacate the petitioner's conviction due to the trial court's allegedly inadequate canvass and failure to inquire into a potential conflict of interest following our conclusion that there was no conflict of interest in this case. *Myers* v. *Commissioner of Correction*, 68 Conn. App. 31, 38–39, 789 A.2d 999, cert. denied, 260 Conn. 907, 795 A.2d 545 (2002); see also *State* v. *Cruz*, 41 Conn. App. 809, 816, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996) (no further inquiry or waiver required when no conflict existed). Accordingly, we conclude that the habeas court correctly dismissed the petitioner's due process claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The first part of the information charged the petitioner with possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell by a person who is not drug-dependent within 1500 feet of a school or housing project in violation of General Statutes § 21a-278a (b), possession of narcotics in violation of General Statutes § 21a-279 (a), and interfering with an officer in violation of General Statutes § 53a-167a. The second part of the information charged the petitioner with committing the crimes cited while released on bond in violation of General Statutes § 53a-40b.

[2] The order further required, inter alia, Silverstein to "discuss with the client[s] the basis for the advice, including *Phillips* v. *Warden*, 220 Conn. 112 [595 A.2d 1356] (1991)" and to offer clients the opportunity to consult with independent counsel of the clients' choosing concerning the issue at Silverstein's expense.

[3] Judge Silbert's order referred to Silverstein's *criminal* charges, but the trial court told the petitioner that he could require Silverstein to inquire whether prospective jurors knew of his *grievance* charge.

[4] The petitioner first filed a petition for a writ of habeas corpus on June 2, 2008. Subsequently, the petitioner filed amended petitions on July 28, October 11, and December 12, 2011.

[5] The petitioner filed a reply to the return on October 19, 2011. The petitioner later submitted a final amended petition on the first day of trial, December 12, 2011. The parties agreed to permit the petitioner to file the amended petition and to allow the respondent to submit a reply to clarify any scrivener's errors or responses previously filed that were based on allegations in the amended petition dated October 11, 2011. The respondent subsequently filed a reply to the petitioner's amended petition on December 14, 2011, a day after the trial had ended.

[6] The court did not address the respondent's special defense of procedural default in its memorandum of decision.

[7] Cannatelli filed his appearance on behalf of Rodriguez on May 29, 1991. *Rodriguez* v. *Commissioner of Correction*, supra, 312 Conn. 348. Cannatelli's trial began in October, 1991, and the judgment was rendered on October 29, 1991. Id. Jury selection for Rodriguez' trial began on November 26, 1991. Id.

[8] In 2002, Rodriguez had commenced his probation when he was arrested for violating the terms of his probation. *Rodriguez* v. *Commissioner of Correction*, supra, 312 Conn. 349. The court determined that Rodriguez had violated the terms of his probation and sentenced him to serve the remaining seven years of his unexecuted sentence. Id. The operative petition for a writ of habeas corpus was filed in December, 2008. Id.

[9] The petitioner submitted into evidence a single article that covered Silverstein's 1999 arrest. The habeas court found that various television agencies had covered Silverstein's 2003 arrest and his entry into the accelerated rehabilitation program, but the record does not contain evidence regarding such television coverage.

[10] In fact, our Supreme Court acknowledged "inherent flaws" in requiring an attorney to "inform previously unaware jurors of the fact of the attorney's criminal prosecution," noting that such a disclosure would "create bias where none may have existed." *Rodriguez* v. *Commissioner of Correction*, supra, 312 Conn. 359.